UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| SLATER L. YOHEY, | | Case No. 3:20-cv-00441-ART-CLB |
| | Petitioner, | ORDER |
| v. | | |
| NETHANJAH BREITENBACH,[1] et al., | | |
| | Respondents. | |

Petitioner Slater L. Yohey filed a counseled second-amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (ECF No. 24.) This matter is before this court for adjudication of the merits of that second-amended petition, which alleges that (1) his counsel failed to investigate or present mitigating evidence at sentencing, (2) his counsel failed to object during sentencing to the trial court's failure to consider the factors under Nev. Rev. Stat. § 193.165, (3) his counsel failed to file a direct appeal, and (4) the trial court failed to consider the factors under Nev. Rev. Stat. § 193.165. (*Id.*) For the reasons discussed below, this court grants the petition on ground 3.

## I.   BACKGROUND[2]

On August 31, 2015, Yohey ran into a former friend at the Western Village Inn & Casino in Reno, Nevada. (ECF No. 37-2 at 9.) The former friend and another man invited Yohey back to an apartment. (*Id.*) After about 20 minutes of drinking at the apartment, Yohey pulled out a gun,[3] ordered his former friend to tie up the

---

[1]The state corrections department's inmate locator page states that Yohey is incarcerated at Lovelock Correctional Center. Nethanjah Breitenbach is the current warden for that facility. At the end of this order, this court directs the clerk to substitute Nethanjah Breitenbach as a respondent for Respondent Perry Russell. *See* Fed. R. Civ. P. 25(d).

[2]This court makes no credibility findings or other factual findings regarding the truth or falsity of the facts of this case. This court's summary of the facts is merely a backdrop to its consideration of the issues presented in the case.

[3]The gun was "an airsoft, realistic-looking handgun." (ECF No. 37-2 at 10.)

other man, robbed the men, tied up his former friend, stole a vehicle, evaded police officers, wrecked the vehicle, and fled on foot before being apprehended. (*Id.*)

On December 1, 2015, after Yohey waived his preliminary hearing at the state justice court, the prosecution filed an information in the state district court, charging Yohey with robbery with the use of a deadly weapon, robbery with the use of a deadly weapon on a victim over the age of 60 years, first-degree kidnapping, grand larceny of a motor vehicle, and eluding a police officer. (ECF No. 17-2.) The following day, Yohey's counsel filed a personal reference letter with the state district court from Yohey's pastor. (ECF No. 17-3.) On December 3, 2015, Yohey's counsel requested a competency evaluation be conducted on Yohey. (ECF No. 17-4.) The state district court granted the request. (ECF No. 17-6.) Following Yohey's competency evaluation, the state district court found Yohey to be competent. (ECF No. 17-7.) Yohey entered into a plea agreement with the prosecution which provided that Yohey would plead guilty to all the charges in return for the prosecution recommending a definite term of 5-15 years on the first-degree kidnapping charge and agreeing not to seek habitual criminal treatment. (ECF No. 17-8.) Yohey was arraigned and pleaded guilty as provided in the guilty plea agreement. (ECF No. 17-10.)

On June 9, 2016, the state district court entered a judgment of conviction, sentencing Yohey as follows: (1) 48 to 180 months for the robbery conviction plus a consecutive sentence of 12 to 48 months for the deadly weapon enhancement, (2) 48 to 180 months for the second robbery conviction to be served consecutive to count 1 plus a consecutive term of 12 to 48 months for the deadly weapon enhancement, (3) 60 to 180 months for the first-degree kidnapping conviction to be served consecutive to counts 1 and 2, (4) 18 to 60 months for the grand larceny of a motor vehicle conviction to be served concurrently with count 3 and consecutive to counts 1 and 2, and (5) 24 to 72 months for the eluding conviction

to be served concurrently with counts 3 and 4 and consecutive to counts 1 and 2. (ECF No. 17-12.) Yohey's aggregate sentence is 180 to 636 months (or 15 to 53 years). (*Id.* at 4.)

Yohey filed a *pro se* direct appeal on July 22, 2016. (ECF No. 17-13.) Yohey's appeal was dismissed by the Nevada Supreme Court for being untimely. (ECF No. 17-16.) Remittitur issued on October 7, 2016. (ECF No. 17-17.)

On November 8, 2016, Yohey filed a *pro se* state postconviction petition. (ECF No. 17-21.) The state district court appointed counsel for Yohey. (ECF No. 17-23.) Thereafter, Yohey's first appointed state postconviction counsel filed a notice that no supplement would be filed. (ECF No. 17-24.) Yohey's first appointed state postconviction counsel then moved to withdraw as counsel. (ECF No. 17-27.) The state district court granted the request and appointed new counsel. (ECF Nos. 17-29, 17-30.) An evidentiary hearing was held on December 19, 2018. (ECF No. 17-33.) The state district court denied Yohey postconviction relief on March 1, 2019. (ECF No. 17-34.) Yohey appealed, and the Nevada Supreme Court affirmed on April 16, 2020. (ECF No. 17-41.) Remittitur issued on May 11, 2020. (ECF No. 17-42.)

Yohey submitted his *pro se* federal petition for a writ of habeas corpus on or about July 29, 2020. (ECF No. 1-1.) This court appointed counsel, and Yohey filed a counseled first-amended petition and a counseled second-amended petition. (ECF Nos. 6, 11, 16, 24.) Respondents moved to dismiss the second-amended petition. (ECF No. 34.) Yohey moved to strike the motion to dismiss or, in the alternative, moved for a more definite statement relating to Respondents' timeliness and relation back arguments. (ECF No. 40.) In their response to the motion to strike, Respondents agreed to submit a renewed motion to dismiss. (ECF No. 50.) This court granted the motion to strike. (ECF No. 52.) Respondents filed a renewed motion to dismiss. (ECF No. 51.) This court granted Respondents' renewed motion, in part, finding (1) that ground 4 is procedurally defaulted and

(2) grounds 1 and 2 are technically exhausted but procedurally defaulted. (ECF No. 64.) Respondents filed their answer to the second-amended petition on July 20, 2023, and Yohey filed his reply on November 3, 2023. (ECF Nos. 68, 71.)

## II.   GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision

to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.    DISCUSSION

### A.    Ground 1—counsel's failure to present mitigation at sentencing

In ground 1, Yohey alleges that his counsel was ineffective due to his failure to investigate or present mitigation at his sentencing in violation the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 24 at 5.) Specifically, Yohey argues that his trial counsel failed to present the full picture to the state district court regarding his addiction to drugs, including the following facts: Yohey started using drugs when he was a young teenager; by the time he was a young adult, Yohey was addicted to opioids; at age eighteen, Yohey was rushed to the emergency room where he was treated for alcohol poisoning; after graduating from high school, Yohey regularly used cocaine, opioids, and ecstasy; in the midst of this serious drug problem, Yohey made several attempts to overcome his addition and ultimately did succeed for a period of 2.5 years; Yohey relapsed when he experienced a relationship loss; and by the time he was arrested, Yohey

1    had lost his job and had become homeless. (*Id.* at 6.)

## 1.    Procedural default

3    This court previously determined that ground 1 was technically exhausted because it would be procedurally barred in the state courts, and this court deferred a decision on whether Yohey can demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) to overcome the procedural default. (ECF No. 64 at 8–9.) Now that this issue is ripe for decision, the principal issues[4] are: (1) whether Yohey's ineffective-assistance-of-trial-counsel claim is substantial; (2) if so, whether Yohey's state postconviction counsel was ineffective in raising this claim in the state court; and (3) if so, whether, on the merits, Yohey was denied effective assistance of trial counsel. *See, e.g., Atwood v. Ryan*, 870 F.3d 1033, 1059–60 (9th Cir. 2017). On all such issues, this court's review is *de novo*. *Id.* at 1060 n.22.

## 2.    Background information

At Yohey's sentencing hearing, the state district court noted that it had reviewed Yohey's presentence investigation report, substance abuse evaluation prepared by Janice Fung, Yohey's court-ordered evaluation prepared by Dr. Bissett, Yohey's court-ordered evaluation prepared by Dr. Pearson, and a letter from Pastor Mark Evans. (ECF No. 17-11 at 5.) Yohey's trial counsel made the following arguments on Yohey's behalf: (1) a minimum sentence of only 11 years would give Yohey incentive to do well when he is paroled given that he would "have the high end that he's going to have to deal with," (2) a lower sentence than that recommended by the division of parole and probation—15 to 53 years—

---

[4]It has not been disputed herein (1) that a state postconviction proceeding in the state court was an initial-review collateral proceeding for purposes of *Martinez*, or (2) that Nevada procedural law sufficiently requires an inmate to present a claim of ineffective assistance of trial counsel for the first time in that proceeding for purposes of applying the *Martinez* rule. *See generally Rodney v. Filson*, 916 F.3d 1254, 1259–60 (9th Cir. 2019).

would be appropriate given that Yohey "will be serving out a prison term that effectively will be equivalent . . . to somebody taking the life of another human being," (3) Yohey has "take[n] responsibility for the crimes in this case" and was remorseful, (4) "Yohey ha[d] a significant drug problem that he[ had] been struggling with for years," (5) Yohey "went to Bible college . . . [and] taught Bible classes," (6) Yohey's "goal was to try and score some methamphetamine" the night the crimes were committed, (7) Yohey thought one of the victims of the robbery was a pedophile, (8) Yohey had been "doing an excellent job with working with the kids" in "Kids Court," and (9) "Yohey ha[d] been a trustee up at the jail and been working with inmates who suffer from mental health issues." (*Id.* at 8–16, 25.) Mr. Smith, Yohey's pastor, then testified as a character reference on Yohey's behalf, and Yohey gave his allocution. (*Id.* at 16–19, 29–34.)

### 3.    Standard for an effective assistance of counsel claim

In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984). A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Additionally, to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, the errors must be "so serious as to deprive the

defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### 4.  Analysis

Counsel's performance at the penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688. When challenging counsel's actions in failing to present mitigating evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable.*" *Wiggins v. Smith*, 539 U.S. 510, 522–23 (2003) (emphasis in original). "To perform effectively . . . counsel must conduct sufficient investigation and engage in sufficient preparation to be able to present and explain the significance of all the available mitigating evidence." *Lambright v. Schriro*, 490 F.3d 1103, 1116 (9th Cir. 2007) (internal quotation marks and brackets omitted).

Yohey fails to demonstrate that his trial counsel failed to investigate and present mitigating evidence. *Wiggins*, 539 U.S. at 522–23. To factually support this ground, Yohey cites to Pastor Evans' letter, Yohey's presentence investigation report, and Yohey's substance abuse evaluation from Janice Fung.[5] (ECF Nos. 24 at 6; 71 at 24–26.) Not only were these document—apart from the presentence investigation report—acquired by Yohey's trial counsel and provided to the state district court, but the state district court specifically noted at the beginning of Yohey's sentencing hearing that he had reviewed these documents. (*See* ECF No. 17-11 at 5.) Accordingly, Yohey fails to demonstrate that his trial counsel failed to investigate. And although Yohey's trial counsel certainly could have made a more strenuous argument regarding Yohey's substance abuse issues, Yohey fails

---

[5]Yohey also cites to his medical records from Northern Nevada Medical Center, which were obtained by the Federal Public Defender on or about February 1, 2021. (ECF No. 25-1.) However, this court is precluded from "consider[ing] evidence beyond the state-court record based on ineffective assistance of state postconviction counsel." *Shinn v. Ramirez*, 596 U.S. 366, 382 (2022).

to demonstrate prejudice given that his substance abuse was well known to the state district court. In fact, Yohey spoke about his substance abuse issues during his allocution, Yohey's substance abuse evaluation and presentence investigation report detailed Yohey's substance abuse issues, and the state district court acknowledged the role drugs played in Yohey's crimes. (ECF Nos. 18-1; 17-11 at 31–33, 42–43; 37-1.) Consequently, because Yohey fails to show that his trial counsel was ineffective regarding the presentation of mitigation evidence at sentencing, his ineffective-assistance-of-counsel claim is not substantial. Therefore, Yohey fails to demonstrate the requisite prejudice necessary to overcome the procedural default of ground 1. Ground 1 is dismissed.

### B.    Ground 2—counsel's failure to object at sentencing

In ground 2, Yohey alleges that his counsel was ineffective for failing to object to the state district court's failure to consider the factors under Nev. Rev. Stat. § 193.165 on the record as required under Nevada law in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 24 at 7.)

#### 1.    Procedural default

Like ground 1, this court previously determined that ground 2 was technically exhausted because it would be procedurally barred in the state courts, and this court deferred a decision on whether Yohey can demonstrate cause and prejudice under *Martinez* to overcome the procedural default. (ECF No. 64 at 8–9.) Now that this issue is ripe for decision, the principal issues, which this court reviews *de novo*, are: (1) whether Yohey's ineffective-assistance-of-trial-counsel claim is substantial; (2) if so, whether Yohey's state postconviction counsel was ineffective in raising this claim in the state court; and (3) if so, whether, on the merits, Yohey was denied effective assistance of trial counsel.

#### 2.    Nevada law

Nevada law provides that a state district court "shall consider the following" factors "[i]n determining the length of the additional penalty imposed" for the

deadly weapon enhancement: "(a) [t]he facts and circumstances of the crime; (b) [t]he criminal history of the person; (c) [t]he impact of the crime on any victim; (d) [a]ny mitigating factors presented by the person; and (e) [a]ny other relevant information." Nev. Rev. Stat. § 193.165(1). The statute also provides that "[t]he court shall state on the record that it has considered the information described in paragraphs (a) to (e), inclusive, in determining the length of the additional penalty imposed." *Id.* The Nevada Supreme Court has "direct[ed] the district courts to make findings regarding each factor enumerated in NRS 193.165(1) . . . when imposing a sentence for a deadly weapon enhancement." *Mendoza-Lobos v. State*, 125 Nev. 634, 642, 218 P.3d 501, 506 (2009).

### 3.    Background information

At Yohey's sentencing hearing, the state district court stated the following:

> [I]t is the order and judgment of the Court that the weapon enhancement [for count 1] will be an indeterminate period not to exceed 48 months, with a minimum parole eligibility of 12 months. The Court has considered the factors described in NRS 193.165 in coming to the conclusion as to the weapons enhancement.
> . . . .
> Further, it is the order and judgment of the Court regarding the weapons enhancement [for count 2] that the defendant receive a consecutive sentence of not-to-exceed 48 months, with a minimum parole eligibility of 12 months. And again, regarding Count 2, the Court has taken into consideration the facts described in NRS 193.165.

(ECF No. 17-11 at 47.)

Later, during Yohey's postconviction evidentiary hearing, the state district court judge stated, "as the sentencing judge I can tell you I did significantly consider [the factors under Nev. Rev. Stat. § 193.165], because I gave the defendant almost the lowest sentence allowed by law as far as the weapon enhancement." (ECF No. 17-33 at 70.)

### 4.    Analysis

Yohey is correct that the state district court did not strictly abide by the requirements of Nev. Rev. Stat. § 193.165(1) by discussing each factor. Thus, it

would have been prudent for Yohey's trial counsel to have objected to the state district court's failure to abide by the requirements of Nev. Rev. Stat. § 193.165(1). However, Yohey fails to demonstrate prejudice.

Yohey's contention that there is a reasonable probability that the state district court would have imposed a lesser sentence had his trial counsel objected to the state district court's error is mere speculation. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019) ("*Strickland* prejudice is not established by mere speculation."). Indeed, the state district court stated at the sentencing hearing that it had considered the factors, and the state district court stated at the postconviction evidentiary hearing that it "significantly consider[ed]" the factors. (ECF Nos. 17-11 at 47; 17-33 at 70.) As such, had Yohey's trial counsel lodged an objection, the state district court may have specifically discussed each factor on the record. However, it is mere conjecture that this formulaic discussion of the factors would have altered the state district court's sentencing decision in light of its prior—although unrecorded—consideration of the same factors and its minimal sentencing on the deadly-weapon enhancements.[6] *See Mendoza-Lobos*, 218 P.3d at 508 (finding that even though "the district court failed to articulate findings regarding each of the enumerated factors for each deadly weapon enhancement[,] . . . nothing in the record indicates that the district court's failure to make certain findings on the record had any bearing on the district court's sentencing decision," so "the district court's omission did not cause any prejudice or a miscarriage of justice"). Accordingly, because Yohey fails to show prejudice regarding his trial counsel's lack of an objection, his ineffective-assistance-of-counsel claim is not substantial. Because Yohey fails to demonstrate the requisite

---

[6]Under Nevada law, the state district court could have imposed lesser sentences of 12 to 30 months on each deadly weapon enhancement—as opposed to the 12 to 48 months sentences that were imposed. However, the state district court also could have sentenced Yohey to a maximum term of 15 years for each deadly weapon enhancement.

prejudice necessary to overcome the procedural default of ground 2, ground 2 is dismissed.

### C.   Ground 3—counsel's failure to file a direct appeal

In ground 3, Yohey alleges that his counsel was ineffective for failing to file a direct appeal on his behalf in violation of the Fifth, Sixth, and Fourteenth Amendments. (ECF No. 24 at 10.) Yohey explains that he had a non-frivolous claim on direct appeal: the state district court erred when it did not consider all the factors on the record under the deadly weapon enhancement statute. (*Id.* at 10.)

#### 1.   Background information

At his postconviction evidentiary hearing, Yohey testified "after [he] was sentenced[, he] asked [his trial counsel if he could] even appeal this, because in [his] eyes it was a severe amount of time [he] was just sentenced to." (ECF No. 17-33 at 96.) According to Yohey, his trial counsel responded by explaining that Yohey had waived his right to appeal by pleading guilty. (*Id.*) Contrarily, Yohey's trial counsel testified, *inter alia*, to the following: (1) he did not "recall Mr. Yohey telling [him] directly at the conclusion of his sentencing that he wanted to appeal," (2) if Yohey had requested that an appeal be filed, he would have "draft[ed] a one paragraph memorandum listing . . . any possible legal issues that [the public defender's appellate deputy] could address," and (3) he never "indicate[d] to Mr. Yohey that he did not have a right to appeal because he had entered a guilty plea." (*Id.* at 24–25, 34–35.)

Yohey wrote a letter to the public defender's office after his sentencing hearing. (ECF No. 17-31 at 7.) The letter is illegible now. (*Id.* at 6.) The public defender's appellate deputy reviewed the record and wrote an email to Yohey's trial counsel, explaining that (1) "Yohey writes that he was surprised at the sentences" he received, (2) he had "reviewed the district court records," and (3) asked whether the state district court judge "rel[ied] on anything in fashioning

his sentences that would constitute an abuse of discretion" or whether he "believe[d] any issues exist[ed] for appeal." (*Id.* at 9.) Yohey's trial counsel responded, "I do not believe there are any issues that exist for the purpose of an appeal." (*Id.*) Yohey's trial counsel also stated that Yohey "did not request, from [him], an appeal." (*Id.*) The public defender's appellate deputy wrote Yohey a letter on July 6, 2016, explaining (1) that the "letter [was] in response to [his] recent letter asking [him] to look at [Yohey's] case for possible appeal," (2) "the sentences [Yohey received were] within the range of the applicable penalty provisions," (3) the minutes from the sentencing hearing "reflect that the district court judge did not abuse his sentencing discretion," and (4) "there are no issues here for appeal." (*Id.* at 4.)

The public defender's appellate deputy testified, *inter alia*, to the following at Yohey's postconviction evidentiary hearing regarding Yohey's letter: (1) he received correspondence from Yohey on July 5, 2016, before Yohey's 30-day appeal window had closed, (2) Yohey's letter asked him "to take a look at [the] case for possible appeal," (3) he emailed Yohey's trial counsel "for some information from him," (4) Yohey's trial counsel responded "that he did not believe that there were any issues for purposes of appeal" and "that his client had not asked for an appeal," (5) if someone does not specifically ask for an appeal to be filed, he looks into the record of the case "[and] depending on the information that [he has] or find[s] out, [he] will either initiate an appeal or not," (6) if someone says they want an appeal, he would file an appeal, (7) Yohey's letter "wasn't a demand for an appeal," and (8) he "would not file a notice of appeal solely to be able to extend time to do some kind of exploration." (ECF No. 17-33 at 41, 44, 45, 46, 47, 49, 52, 53.) And regarding whether the state district court's alleged failures under Nev. Rev. Stat. § 193.165(1), the public defender's appellate deputy testified, *inter alia*, to the following: (1) "if you have an enhancement that's in the small range of possibilities, then that tells me that the district court judge actually

exercised some discretion," (2) if he had raised a discretion issue on appeal, the prosecution would have "respond[ed] by saying, '[t]he Court could not have exercised any more discretion,'" (3) he would not have raised the weapon enhancement issue here because "the sentence [was] within the small part of the sentencing range, so . . . there would [not] be any error there," especially since there was no objection by Yohey's trial counsel, meaning the issue would only be reviewed for plain error, and (4) if all the factors are considered during sentencing—albeit not at one time and in connection with Nev. Rev. Stat. § 193.165(1) directly—even if counsel had objected and preserved the issue for appeal, the issue is not likely to succeed on appeal, especially in this case with "the actual underlying enhancement sentence that was imposed." (*Id.* at 61, 62, 63, 66, 73.)

## 2.    State court determination

In affirming the state district court's denial of Yohey's state postconviction petition, the Nevada Supreme Court held as follows:

> Appellant argues the district court erred in denying his claim that counsel were ineffective for failing to file a direct appeal on his behalf. Trial counsel has a duty to file a notice of appeal in two instances: when asked to do so or when the client expresses a desire to challenge the conviction or sentence. *Toston v. State*, 127 Nev. 971, 978–80, 276 P.3d 795, 800–01 (2011). The latter may be "reasonably inferred from the totality of the circumstances, focusing on the information that counsel knew or should have known at the time." *Id.* at 979, 276 P.3d at 801. It is a defendant's burden to inform counsel that he wants to appeal. *Id.* If trial counsel had a duty to file an appeal but failed to do so, prejudice is presumed. *Id.* at 976, 276 P.3d at 799.
>
> At the evidentiary hearing, appellant testified that he asked trial counsel, Mr. Christopher Fortier, to file an appeal immediately after sentencing but was told that he could not appeal because he had entered a guilty plea. Mr. Fortier testified that he was not asked to file an appeal, he never told appellant that he could not appeal, and that if he had been asked to file an appeal he would have done so. Appellant further testified that he sent a follow-up letter to the appellate deputy of the Washoe County Public Defender's Office, Mr. John Petty. An illegible copy of the letter was presented in evidence, and appellant did not testify about the letter's content. Mr. Petty testified that he understood the letter as inquiring about the possibility of an appeal but not asking for an appeal. Consequently, he wrote a responsive letter explaining the lack of meritorious issues

1
2
3
4
5
6
7

for an appeal. Mr. Petty testified about his usual practice and testified that he would have filed an appeal if he believed appellant had asked for one in the letter.

The district court denied the claim, finding that appellant had not unequivocally asked either attorney to file an appeal. The district court further found Mr. Fortier's and Mr. Petty's testimony "wholly credible and supported by the evidence." Substantial evidence in the record supports those findings. At the most, the evidence indicates that appellant inquired about the possibility of an appeal, but his inquiry fell short of a request or an unequivocal desire for counsel to file an appeal. Thus, counsel were not deficient in failing to file an appeal on his behalf. The district court therefore did not err in denying this claim.

8

(ECF No. 17-41 at 2–3.)

9

### 3.    Standard for ineffective claims regarding filing an appeal

10

The *Strickland* "test applies to claims . . . that counsel was constitutionally

11

ineffective for failing to file a notice of appeal." *Roe v. Flores-Ortega*, 528 U.S. 470,

12

477 (2000). "[W]here the defendant neither instructs counsel to file an appeal nor

13

asks that an appeal not be taken, . . . the question whether counsel has performed

14

deficiently by not filing a notice of appeal is best answered by first asking . . .

15

whether counsel in fact consulted with the defendant about an appeal." *Id.* at

16

478. "Consult" means "advising the defendant about the advantages and

17

disadvantages of taking an appeal, and making a reasonable effort to discover the

18

defendant's wishes." *Id.* "If counsel has not consulted with the defendant, the

19

court must in turn ask a second, and subsidiary, question: whether counsel's

20

failure to consult with the defendant itself constitutes deficient performance." *Id.*

21

"[C]ounsel has a constitutionally imposed duty to consult with the defendant

22

about an appeal when there is reason to think either (1) that a rational defendant

23

would want to appeal (for example, because there are nonfrivolous grounds for

24

appeal), or (2) that this particular defendant reasonably demonstrated to counsel

25

that he was interested in appealing." *Id.* at 480. In order "to show prejudice [from

26

a lack of consultation regarding a notice of appeal], a defendant must

27

demonstrate that there is a reasonable probability that, but for counsel's deficient

28

failure to consult with him about an appeal, he would have timely appealed." *Id.*

at 484.

### 4.   Do novo review

Yohey argues that this court should review ground 3 *de novo* because the Nevada Supreme Court applied a standard that is contrary to *Flores-Ortega* when it stated that "[i]t is a defendant's burden to inform counsel that he wants to appeal." (ECF No. 71 at 18.) Yohey elaborates that the Nevada Supreme Court did not even acknowledge counsel's duty to consult with a client about an appeal. (*Id.* at 19.) This court agrees. Under *Flores-Ortega*, there is a three-step process that must be followed when a defendant neither instructs his or her counsel to file an appeal nor asks that an appeal not be taken, which is the situation present here. First, it must be considered whether counsel consulted with the defendant about an appeal. Second, if counsel did not consult, it must be considered whether counsel had a duty to consult. And third, if counsel failed to fulfill his or her duty to consult, it must be considered whether the defendant would have timely appealed but for his or her counsel's deficiency. The Nevada Supreme Court's analysis merely determined that Yohey did not sufficiently ask his trial counsel to file an appeal. However, the Nevada Supreme Court failed to apply the three-step process under *Flores-Ortega* regarding consultation. Consequently, because the Nevada Supreme Court applied a standard contrary to *Flores-Ortega*, this court does not defer to the Nevada Supreme Court's decision.

### 5.   Analysis

Yohey's trial counsel testified that Yohey did not instruct him to file a notice of appeal, and the public defender's appellate deputy testified that Yohey's letter only asked him to look into his case for a possible appeal. These testimonies demonstrate that Yohey did not unequivocally request that his counsel file a notice of appeal. As such, under *Flores-Ortega*, the first question to be answered in this situation—a situation in which Yohey neither definitively instructed counsel to file an appeal nor asked that an appeal not be taken—is whether

Yohey's trial counsel consulted with him about an appeal. There is no evidence in the record that such a consultation took place. The second question to be answered is whether Yohey's trial counsel had a duty to consult because either (1) a rational defendant would want to appeal or (2) Yohey reasonably demonstrated that he was interested in appealing. Although a rational defendant in Yohey's position may not have wanted to appeal given the lack of meritorious grounds for appellate relief, given the circumstances following Yohey's sentencing, a reasonable attorney would have been put on notice of the duty to consult with Yohey about the benefits and drawbacks of filing a notice of appeal. Indeed, before his window for filing a notice of appeal had closed, he drafted and mailed a three-paragraph letter to the public defender's office, asking for someone to look at his case for a possible appeal. This letter—the contents of which were emailed to Yohey's trial counsel—sufficiently demonstrates Yohey's interest in an appeal, triggering his trial counsel's duty to consult with him. Yohey's trial counsel's failure to consult in this situation constitutes deficient performance. The third question to be answered is whether Yohey demonstrates that there is a reasonable probability that, but for his counsel's deficient failure to consult with him about an appeal, he would have timely appealed. Yohey filed a *pro se* notice of appeal on July 22, 2016, which was 12 days after his 30-day deadline expired. Given that Yohey inquired about filing an appeal before his 30-day deadline expired and filed a *pro se* notice of appeal upon receiving the public defender's appellate deputy's response letter, Yohey demonstrates a reasonable probability that he would have filed a timely appeal had his counsel not failed to consult with him. Yohey is granted relief on ground 3.

**D.      Ground 4—trial court's failures under Nev. Rev. Stat. § 193.165**

In ground 4, Yohey alleges that his due process rights under the Fifth and Fourteenth Amendments were violated when the state district court failed to consider the factors under Nev. Rev. Stat. § 193.165 on the record as required

under Nevada law. (ECF No. 24 at 12.)

This court previously found ground 4 to be procedurally defaulted. (ECF No. 64 at 3.) Yohey argued that he could overcome the default due to his counsel's failure to file a notice of appeal. (*Id.*) This court deferred a decision on whether the ineffective assistance alleged in ground 3 constitutes cause to overcome the procedural default of ground 4. (*Id.* at 6.) Because this court has concluded that Yohey's counsel was ineffective in ground 3, ground 3 constitutes cause to overcome the procedural default of ground 4. However, Yohey fails to demonstrate that the state district court's errors under Nev. Rev. Stat. § 193.165 warrant the granting of federal habeas relief. Rather, the state district court's failure here is simply an error of state law, and Yohey fails to demonstrate that the error arises to an independent due process violation. *See Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (explaining that "[s]imple errors of state law do not warrant federal habeas relief"); *Jammal v. Van de Kamp*, 926 F.2d 918, 919–20 (9th Cir. 1991) ("[T]he presence or absence of a state law violation is largely beside the point."). Yohey is denied federal habeas relief for ground 4.

## IV.   CONCLUSION[7]

It is therefore ordered that the second-amended petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (ECF No. 24) is granted as to ground 3. Within 30 days[8] of the later of (1) the conclusion of any proceedings seeking appellate or certiorari review of this court's judgment, if affirmed, or (2) the expiration for seeking such appeal or review, the Second Judicial District Court for the State of Nevada shall either release Petitioner Slater L. Yohey from state custody or to allow him, within a reasonable time, to perfect a direct appeal.

It is further ordered that, to the extent necessary, a certificate of

[7]Yohey requests that this court conduct an evidentiary hearing. (ECF No. 24 at 15.) This court declines to do so because it is able to decide the petition on the pleadings.
[8]Reasonable requests for modification of this time may be made by either party.

18

1    appealability is denied for grounds 1, 2, and 4.

2        It is further ordered that the Clerk of the Court (1) substitute Nethanjah

3    Breitenbach for Respondent Perry Russell, (2) enter judgment accordingly, (3)

4    provide a copy of this order and the judgment to the Clerk of the Second Judicial

5    District Court for the State of Nevada in connection with that court's case number

6    CR15-1779, and (4) close this case.

9        DATED THIS 12th day of February 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE